(117 App. Div. 192)

PEOPLE ex rel. MAGUIRE v. BINGHAM, Police Com'r.

(Supreme Court, Appellate Division, First Department. January 25, 1907.)

MUNICIPAL CORPORATIONS—OFFICERS—POLICE OFFICERS—REMOVAL—GROUNDS—EVIDENCE—SUFFICIENCY.

    The father of a boy who had been arrested by a patrolman threatened, after the boy had been discharged, to get even, and went to an inspector and reported that he was going to give the patrolman money. The inspector furnished the money, which the father forced into the hands of the patrolman, and then ran and took a car, giving the patrolman no opportunity to refuse it. In pursuance of the plan, the inspector came upon the patrolman soon afterward, who at once admitted that he had the money and explained the facts. *Held*, that the patrolman did not receive money, in violation of Police Manual, Rule 22, or Greater New York Charter, Laws 1897, p. 108, c. 378, § 306, prohibiting a member of the police force from sharing in any gift, etc., and his discharge was improper.

Certiorari by the people, on the relation of Hugh F. Maguire, against Theodore A. Bingham, as police commissioner of the city of New York, to review the dismissal of relator from the police force of the city of New York. Relator reinstated.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, HOUGHTON, and LAMBERT, JJ.

Jacob Rouss, for relator.
Theodore Connoly, for respondent.

LAMBERT, J. The relator was charged with conduct unbecoming an officer, the specifications being as follows:

"First. Said Patrolman Hugh F. Maguire, of the Twenty-Fifth precinct, did, at about 9:30 a. m., September 23, 1905, at the northwest corner of East Eleventh street and Third avenue, willfully and wrongfully advise one Maurice McMahon, of 206 East One Hundred and Twenty-Sixth street, to pledge a watch which the said McMahon's son, Maurice McMahon, Jr., had found in the public streets, and to give Patrolman David Isenberg, of the Twenty-Fifth precinct, $5 from the amount borrowed on said watch.

"Second. Said Patrolman Hugh F. Maguire, by arrangement with one

Maurice McMahon, of 206 East One Hundred and Twenty-Sixth street, met the said McMahon at the southeast corner of Seventy-First street and First avenue at about 8:20 p. m., September 23, 1905, and did then and there accept a five-dollar bill from the said Maurice McMahon in violation of rule 22 of the Police Manual."

Beyond the fact that Maurice McMahon, Jr., did find a watch and a sum of money in the public street, there is not a particle of evidence in support of the first specification, and the dismissal cannot stand upon such specification. It is needless to say that, where an officer is entitled to a trial as a condition of removal, it is necessary that there shall be some evidence in support of the findings of the commissioner.

The undisputed facts in reference to the second specification are that the relator and another officer, one Isenberg, arrested Maurice McMahon, Jr., on suspicion that he had been guilty of larceny. The boy was taken to the stationhouse and locked up overnight, and the following morning he was arraigned before the Children's Court and discharged; no direct evidence being adduced against him. Maurice McMahon, the boy's father, who had known the relator for 25 years or more, and had, up to this time, been friendly with him, met him and asked about the arrest of his son, having in the meantime retained a lawyer in his behalf. The father testified as follows:

"The defendant and his friends came along. I said: 'You know my boy. You had no right to arrest him. Is there a chance of getting him out?' He said: 'Yes.' I said: 'What has he done?' He said: 'It doesn't amount to anything. He has just got a watch and some money.' He said there wasn't anything to charge against the boy. I said: 'I wished I knew that, for I have engaged a lawyer for $5.' He said: 'You did not need a lawyer. The boy will be discharged.' I said: 'I will get even.' When the boy was discharged, I signed a note, a receipt for a ring and $12. He gave it to me in my hand. In the meantime the lawyer came out and says: 'The boy has $12 on him. Don't I get my share?' I said: 'I don't care who gets it.' I said: 'I want the boy.' The boy came out, and I got the watch from the boy, and the boy said: 'I tell you what you can do. Pawn the watch, and let me have the five.' I said to the boy: 'I will do that.' This officer had no right to arrest my boy, and I came down and seen Mr. Brooks and this gentleman, and told them I was going to give Maguire $5 at 8 o'clock, and I told them where. They told me they would be up there at 8 o'clock and give me the $5. I went up there at 8 o'clock and got the money, and he walked past me, and I went after him and put the $5 in his hand. He said: 'What's that for?' I said nothing, and went over and took a car."

It seems from the evidence that upon the boy being discharged, and after McMahon had threatened to get even, he inquired of the relator where he was going to be that evening, and was told that he had an appointment with a man at Seventy-Fifth street and Avenue A at 8 o'clock. With this information in his possession, McMahon went to Inspector Walsh and reported that he was going to give Maguire $5. The inspector furnished the money, which McMahon forced into the hands of the relator, and then, as he says, "ran and took a car," giving the relator no opportunity to refuse the money. In pursuance of the plan, the inspector came upon the relator soon afterward, who at once admitted that he had the money and explained the facts, and these are in no wise disputed; on the contrary, are strongly corroborated. We look in vain for any evidence that the relator accepted this money. It was placed in his hand by a man who had .pretended to be

his friend, and who ran away without making any explanation. The relator made no attempt to deny that he had the money. He has always told a straightforward story in relation to it, in entire harmony with McMahon's own version of the occurrence. The whole transaction appears to have been worked up for the purpose of carrying out the threat of McMahon to get even with Maguire for arresting his son. The evidence negatives the proposition that the money was received in violation of rule 22 of the Police Manual, or of section 306 of the Greater New York Charter (Laws 1897, p. 108, c. 378), and it fails to establish the second specification of the charge.

Under the conceded facts, the relator did not accept the $5 bill. He did not take it and turn it to his own purposes as a matter of free will at all. It was forced upon him without explanation. It is not pretended that it came to him in pursuance of any previous arrangement or understanding, expressed or implied; and, so far as we know, it may have been his intention to restore the money as soon as he met McMahon. He was in the discharge of his duty at the time the money was placed in his hand. He was at the point mentioned in pursuance of an arrangement to meet a man who was to give him information in reference to a burglary, and he appears to have been the victim of a malicious desire on the part of McMahon for revenge.

The determination of the police commissioner not being supported by evidence, the proceedings should be annulled, and the relator reinstated, with costs. All concur.